On Rehearing.
Fenner, J.
This case has been transferred from the Monroe term to this term for decision under an application for rehearing.
The only point in our original opinion which demands reconsideration is the one based on the nonage of the juror Perry, who served on the jury and participated in the verdict.
■ This point is presented on a motion for new trial in the following terms: “That one of the jurors that composed the panel that tried the case against the defendants, P. W. Perry, was not a competent and qualified juror under the laws of Louisiana, for the reason that he was under twenty-one yehrs of age, and not a qualified elector at the time of said trial and at the time he was taken on said jury; that they, through their counsel, used all due diligence in their efforts to secure jurors competent and qualified; that one of their counsel asked the said juror, Perry, his age, and the said juror answered he was twenty-two years old; that said answer was untrue, misleading and a fraud upon defendants, and that by said answer he caused himself to be taken on said jury; that they had no knowledge of said juror’s disqualification and incompetency at the time he was tendered and accepted by them, and until after the trial of said case had been concluded and the verdict rendered and the jury discharged.” The facts thus alleged were verified by the affidavit of both the accused and of their counsel.
*1144 The motion was set down for trial, and evidence was taken contradictorily betw.een the parties, which evidence was reduced to writing. When the judge overruled the motion for new trial a bill of exceptions was duly taken to his ruling, and the evidence was attached to and made a part of the bill.
In this State it has been held in a long series of decisions that rulings of the judge made in the course of the trial, or on motions for new trial, on questions submitted to the judge alone and involving blended issues of law and fact, are reviewable in this court on the facts as well as the law, provided the testimony be reduced to writing and embodied in or attached to the bill of exceptions taken to the ruling.
The leading cases on this point are State vs. Nelson, 32 An. 842, and State vs. Seiley, 43 An. 143, in the last of which the whole subject was reviewed and the doctrine not only reaffirmed but extended (over a dissenting opinion) so as to authorize the parties to demand the reduction to writing of the testimony taken in such cases and to make a refusal of the judge to do so reversible error.
But the general doctrine has been announced in a multitude of cases: 32 An. 819, 854, 1052, 1086; 34 An. 69, 149, 881; 35 An. 770, 823; 36 An. 87, 158, 920; 37 An. 780, 172, 443; 38 An. 539, 581, 660, 684; 39 An. 319, 862, 919; 40 An. 75, 740; 41 An. 143; 42 An. 83.
It is no longer open to discussion, and it imposes on this court the. power and duty to review the findings of the judge in this case not only on the law, but on the facts as exhibited by the testimony, with which the questions of law are inseparably blended.
We consider that, for the maintenance of their motion for newtrial on this point, it was essential that defendants should prove all of three facts, viz.: (1) That the juror, Perry, was under the age of twenty-one; (2) that this fact was unknown to the defendants and their counsel until after verdict; (3) that the juror was questioned as to his age on his voir dire and answered that he was of the age required by law.
The sufficiency of the proof on the first two points was conceded by the judge a quo, and we find no ground for questioning it.
The learned judge, with his usual directness and perspicuity, says: “The pivotal point is, did the defendants examine the juror as to his age, and were they misled by his answers? This is purely a question of fact to be decided on the evidence adduced. If the *1145 juror was in fact interrogated as to his age and answered falsely, and defendants were induced by such false answers to accept him on the panel, they are entitled to a new trial although the juror may have been honest and conscientious in his belief and free from any intent to deceive. On the other hand, if the question was not asked and the false information not voluntarily given by the juror, it is too late, after verdict, to object on the ground of nonage.” We think this statement absolutely correct and fully sustained by authority. We affirmed it in our original opinion herein, saying: “ If the defendants had interrogated the juror Perry on his voir dire as to his age and he had deceived them by stating he was a major, this would be evidence of due diligence on their part. If they had not so interrogated him, this would be a lack of diligence and a waiver of the cause of challenge. Thompson and Merriman, Jury Trials, Secs. 302 et seq.; State vs. Garig, 43 An. 355.”
This court has decided the precise points, saying: “An opportunity is afforded the prisoner of inquiring into the qualifications of the juror on the voir dire examination. If, upon that inquiry, he be found to want the legal qualifications, he may be set aside for that cause. It would have been different if the juror,.when interrogated, had stated that he had acquired the requisite residence, was free from bias, or that he possessed any other legal qualification, and it had been subsequently discovered that the statement was false. This would have been a fraud upon the prisoner, from which .he could have been relieved.” State vs. Kennedy, 8 Rob. 596.
We have been at pains to make quite an extensive examination of the authorities bearing on this subject, and while we discover some conflict of opinion on the question- whether the incompetency of a juror, though discovered only after verdict, will be ground for new trial in absence of due diligence in testing his qualifications by proper inquiries during the examination on the voir dire, we find no authority holding or suggesting that the new trial can be denied when the party has exercised full diligence in questioning the juror on his voir dire and has been misled and deceived into accepting an incompetent juror by his own answers, avowing his competency, which are sub - sequently discovered to be false. We do not believe such a precedent exists or will ever be made.
The learned trial judge, however, while affirming the above principle, bases his refusal of the new trial on the ground that the evi *1146 dence does not establish, with sufficient certainty, the pivotal fact that defendants did question the juror on his voir dire as to his age and did receive a false answer.
He quotes the following observation of Mr. Bishop in his work on Criminal Procedure, Vol. 1, Sec. —: “ But if, through undiseoverable and unknown wrong, the defendant has been tried and convicted by a panel containing an unfit juror, the evidence of which must be very distiuct where the verdict is right, a new trial will be granted.” He then proceeds to state his opinion that the verdict in this case is right, and that the defendants suffered no practical injury from the fact of the juror’s nonage, and then continues: “ These observations of Bishop do not affect the right of defendants to a new trial where the evidence distinctly shows that they were misled by incorrect answers touching a juror’s age, given before he is accepted and sworn. But they distinctly recognize the rule that the burden of proving that the preliminary examination was held is on the defendants, and the proof must be very distinct and clear where the verdict is right. A mere numerical preponderance of witnesses or a reasonable doubt whether the preliminary examination was or was not had is insufficient. The fact must be established with such a degree of distinct certainty as leaves no reasonable doubt of its existence. If there remains a reasonable doubt of its existence, such doubt can not enure to the benefit of the accused. On the contrary, it enures to the benefit of the verdict, where the latter is fully justified by the law and the evidence.”
It must be admitted that the above is a very strong statement of the weight of the burden of proof carried by defendant; but while the language employed is perhaps a little too strenuous, we are disposed to approve the statement of the rule, with some moderation of its terms, as substantially correct.
The judge proceeds: “Testing the application of this rule, it can not be denied that defendants have failed, in the language of Bishop, to make it very distinct that the juror Perry was questioned as to his age before he was accepted. It is not necessary to go into an examination of the evidence. It is admitted to be contradictory in some vital points — so contradictory, in fact, that no one can read it and be free of a reasonable doubt on the subject. It was the duty of defendants to remove such doubt, and as they have- failed to do so, their application for a new trial must be denied.”
*1147 Influenced by these persuasive statements of the district judge, by our great respect for his rulings and indisposition to disturb them, we affirmed them in our original opinion without criticising the testimony very closely.
The application for rehearing emphasizes the solemnity of our duty, in a ease involving the life of one and the liberty of the other defendant, to review the testimony on the point involved and to determine whether or not it has been correctly weighed by the district judge, and sustains his conclusion that it leaves the fact in controversy subject to reasonable doubt. This duty we could not evade without ignoring the tenor of the constant jurisprudence of this court as settled by the numerous decisions above quoted.
We have now read again and re-read the evidence, and if any fact can be established by human testimony, we can not avoid the conclusion that the testimony in this case clearly establishes that the juror Perry was questioned on his voir dire as to his age, and that he did answer that he was 22 years of age.
Ten witnesses positively swear that they heard the question asked and the answer made. We name them because several of them are known to members of this court as honorable and creditable persons, and none of them are in any way impeached. They are M. O. Elstner, A. L. Kahn (the two counsel of defendants), W. M. D. Cawthon, T. T. Land, Jr., H. O. Rogers, C. W. Crane, S. Kahn, D. March, A. Holt and Prank Looney. Our late respected clerk, W. G. Boney, also testifies that he heard some juror questioned as to his age who answered that he was 22 years old, but could not say whether or not it was the juror Perry.
Against this positive testimony the State brings five witnesses, all of whom state that they were paying attention to the examination and to the questions and answers, and that they heard no such question to Perry or answer by him. One of them, M. L. Scovell, says: “ I am positive the question as to his age was not asked; but there is a possibility that it was asked and I might not have heard it.” Another, N. W. Buckalew, says: “ I will not swear that I heard all the questions asked him.” Another, J. H. Jordan, says: “I do not think the question was asked, but it possibly was.” Another, J. H. Prescott, says: “ I will not say it was impossible,” etc., and again, if the question was asked, “ I would have heard it, as I heard everything; but possibly it passed from my memory.” *1148 The last, John L. Hodges, simply swears that he did not hear the question asked; that he was paying pretty close attention and that to the best of his knowledge and belief it was not asked.
This is a fair statment of the whole testimony found in the record, with the exception of some conflicting evidence about certain statements made by one of the counsel, which has no substantial bearing on the question. On this evidence we are bound to determine whether the defendants have discharged the burden of proof devolving on them. If they have not, how could it be done? If ten unimpeached witnesses positively testifying to a fact evidenced by their own senses are not sufficient, what number would suffice? If the testimony of five persons who did not hear, or do not remember to have heard, a question asked and answered can overthrow or even shake the testimony of ten persons who positively swear that they heard the question and answer, how could such a fact be established in any case? A case of the kind could hardly arise in which witnesses could not be found who did not hear or remember the question and answer. The question as to a juror’s age is not one ordinarily calculated to attract anyone’s attention, or to fix itself on the memory. The question and answer may have been made and yet the witnesses of the State may be absolutely truthfal in their statements. But if the question and answer did not occur, the ten witnesses who swear positively that they heard them are undoubtedly perjurers. As we said in another ease, “ the assertion of a fact which has never had existence can not be consistent with truth, whereas the denial of a fact which has existence may, without violating truth, be the result of inattention or defective memory. Hence the rule that positive testimony on a given point must always predominate over negative testimony on the same point.” Story vs. Ins. Co., 87 An. 258; Guesnard vs. Bird, 88 An. 799.
In this case we do not think it to be a mere question of predomination of evidence. We consider that there is no conflict whatever in the evidence. It leaves no doubt on our minds, reasonable or unreasonable. Unless the ten witnesses of defendants are wilful and conscious perjurers, the defendant’s case is so clearly established that “ the probatio'n bears no hinge or loop to hang a doubt on.”
The defendants unquestionably had the constitutional right to a trial by jury — by the historical jury of twelve men possessing the *1149 qualifications required by law — legales et liberi homines — which unquestionably exclude aliens and minors. They have exercised all due diligence to secure the enjoyment of this right, and have done nothing and omitted nothing which disables them from asserting it, in the manner and at the time when they have done so. Whether guilty or innocent, they are entitled to the protection of the Oonsti - tution. Unless found guilty by due process of law, conducted according to legal and constitutional requirements, the judicial power has no more right to condemn to death the blackest criminal than it has to visit like penalty on the whitest innocent.
However much we may regret the necessity of setting aside a verdict approved as right by the trial judge, our duty under the law and on our official oaths leaves us no other alternative.
It is therefore ordered that our former decree herein be annulled.
It is now adjudged and decreed that the sentences appealed from be avoided and reversed, that the verdict be set aside, and that the case be remanded to the lower court for a new trial according to law.